## 37259. WELLS v. THE STATE.

SMITH, Justice.

Appellant was convicted of murder and sentenced to life imprisonment. He raises four enumerations of error, and we affirm.

On the evening of November 2, 1979, Robert Reeves drove up to a Majik Market convenience store in his van. He was looking for someone who could purchase a pound of marijuana for him. A friend named Mike Glover informed Reeves that he might be able to locate someone who could do so. Glover then introduced Reeves to appellant, who was also at the Majik Market. After discussing the

matter with Reeves, appellant had a separate conversation with Glover. He asked Glover if he wanted to "go off with him and rob" Reeves. Glover refused.

Appellant and Reeves left the Majik Market in Reeves' van.[1] While driving around Augusta, they drank several beers and smoked marijuana.[2] During their time together, appellant made several phone calls, ostensibly to locate a pound of marijuana.[3] Reeves apparently got angry over appellant's lack of success. According to appellant, Reeves taunted him throughout the evening and accused him of coming along solely to get a "free high."

In the course of the journey, appellant became ill. On several occasions, appellant had to get out of the van in order to vomit. The last time this occurred, appellant, who was standing at the passenger door of the van, shot Reeves three times with a .22 caliber pistol. Reeves, who was sitting in the driver's seat, was hit once in front of the right shoulder, once behind the shoulder and once in the right portion of the back. Reeves died within an hour from bleeding in the chest cavity caused by the second and third bullets.

After the shooting appellant fled. He spent the night with a friend. The next morning, he traveled to Atlanta by bus. He was arrested a few days later. Following his arrest, appellant led police investigators to the location of the .22 caliber pistol, which was hidden in an area behind the Majik Market. Expert testimony established that the bullets which killed Reeves came from this gun.

Appellant does not raise the general grounds. The evidence adduced at trial clearly authorized a rational trier of fact to find appellant guilty of murder. Jackson v. Virginia, 443 U. S. 307 (99 SC

---

[1] At this time, appellant and Reeves, the victim, were alone. Much of the information which follows was supplied by appellant, who subsequent to his arrest gave police a statement recounting the events of the evening as well as a signed written admission that he shot Reeves.

We note that, at trial, appellant refuted some of the statements he made after his arrest. He testified he had no independent recollection of shooting Reeves. Nevertheless, he stated that, to the best of his knowledge, he was the last person with Reeves and "[a]s far as I can recollect or as far as the investigators told me, that I am the person that shot Bob Reeves."

The facts recited in the main body of this opinion are based upon the evidence most favorable to the jury verdict. See *Smith v. State,* 245 Ga. 44, 46 (262 SE2d 806) (1980).

[2] Appellant testified that some of the marijuana they smoked was laced with PCP (phencyclidine); however, no traces of the drug were found in the blood or urine samples taken from the victim. Some pills identified as Didrex (an appetite depressant) were found in the van, and the victim had amphetamines in his system.

[3] Appellant later told police that he did not know anyone who had a pound of marijuana and that he called a friend who he knew was not at home.

2781, 61 LE2d 560) (1979).

1. In his first enumeration of error, appellant contends the trial court erred in refusing his written request to charge on delusional compulsion. Code Ann. § 26-703 provides: "A person shall not be found guilty of a crime when at the time of the act . . ., such person, because of mental disease, injury, or congenital deficiency, acted as he did because of a delusional compulsion as to such act which overmastered his will to resist committing the crime."

Appellant bases his argument on his testimony regarding the drugs he had taken prior to the shooting and on expert testimony to the effect that PCP could have caused appellant to become psychotic and suffer a delusion regarding the victim's conduct.

We find no error in the trial court's failure to charge on delusional compulsion. "[I]n Graham v. State, 236 Ga. 378, 379 (I) (223 SE2d 803) (1976), this court stated that '[i]n order for the defense of delusional compulsion to be available in a trial for murder there must be evidence that the defendant was laboring under a delusion . . .' In the present case, although there was testimony that the defendant [had ingested PCP and that this drug could cause delusions] there was no evidence that this defendant was under a delusion . . ." Taylor v. State, 243 Ga. 222, 227 (253 SE2d 191) (1979). Moreover, even if there were such evidence, the delusional compulsion defense was nonetheless unavailable. We quote from the charge in Choice v. State, 31 Ga. 424, 454-455 (1860): "[T]hough it is the general rule that insanity is ordinarily an excuse, yet there is an exception to this rule, and that is, when the crime is committed by a party in a fit of intoxication . . . A voluntary contracted madness is no excuse for crime." Taylor v. State, supra; Strickland v. State, 137 Ga. 115 (1) (72 SE 922) (1911). Accord, Commonwealth v. Hicks, 483 Pa. 305 (396 A2d 1183) (1979); State v. Toth, 52 Ohio St. 2d 206 (371 NE2d 831) (1977); State v. Harden, 206 Kan. 365 (480 P2d 53) (1971); State v. Booth, 169 NW2d 869 (Iowa 1969).

2. In his second and third enumerations of error, appellant challenges the following two instructions on the ground that they violate the U. S. Supreme Court's ruling in Sandstrom v. Montana, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979): "I charge you that when there is direct evidence to show an intentional killing by the defendant the law presumes the homicide to be malicious, unless the contrary appears from the circumstances of alleviation, excuse, or justification . . . If the state proves that the defendant killed the person named in the indictment in this county by the use of a deadly weapon in a manner likely to produce death, then the killing is presumed to be intentional and malicious, unless circumstances of alleviation, excuse, accident, or justification appear to your

satisfaction from the evidence."

The U. S. Supreme Court and this court have consistently recognized that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp v. Naughten, 414 U. S. 141, 146 (94 SC 396, 38 LE2d 368) (1973); Lackey v. State, 246 Ga. 331, 339 (271 SE2d 478) (1980). With this principle in mind, we shall repeat the above charges in the immediate context in which they were given: "Now, I charge you, Members of the Jury, that malice is an essential element of the offense of murder and the burden is on the State to show malice beyond a reasonable doubt. I charge you that when there is direct evidence to show an intentional killing by the defendant the law presumes the homicide to be malicious, unless the contrary appears from the circumstances of alleviation, excuse, or justification. If the State proves that the defendant killed the person named in the indictment in this county by the use of a deadly weapon in a manner likely to produce death, then the killing is presumed to be intentional and malicious, unless circumstances of alleviation, excuse, accident, or justification appear to your satisfaction from the evidence. Whether the defendant killed the deceased and, if he did, whether such killing was intentional and malicious are matters for you to determine from all the facts and circumstances, remembering that the burden of proving guilt beyond a reasonable doubt is always on the State."

Elsewhere in the charge, the court instructed the jury that appellant was presumed innocent; that the burden was on the state to prove every allegation beyond a reasonable doubt; that the jury may find intent or its absence; and that before they could find appellant guilty of murder, they must find and believe beyond a reasonable doubt that the defendant did with malice, either express or implied, cause the victim's death.

While this court has expressly disapproved of criminal jury instructions "cast in terms of 'The law presumes' " (Hosch v. State, 246 Ga. 417, 420 (271 SE2d 817) (1980)), the use of such terminology does not automatically lead to reversal. Id. at 420; Lackey v. State, supra. Rather, the entire charge must be examined to determine whether a reasonable juror could interpret the charge as 1) creating a conclusive presumption or 2) burden shifting.

The charges at issue here are, by their own terms, nonconclusive; appellant does not argue otherwise. Appellant does contend, however, that the charges could be seen by a reasonable juror as "shifting the burden of persuasion to the defendant." We cannot agree.

The "presumptions" regarding malice and use of a deadly

weapon are limited by the language "unless the contrary appears" and "unless circumstances of alleviation, excuse, accident, or justification appear to your satisfaction from the evidence."[4] Nowhere in the charge is a burden expressly placed on the defendant to disprove an element of the offense. Compare Tyler v. Phelps, 622 F2d 172 (5th Cir. 1980); Holloway v. McElroy, 474 FSupp. 1363 (M. D. Ga. 1979). Nor do we believe such a burden can fairly be implied from the assertedly objectionable portion of the charge when viewed in context. See *Hosch v. State,* supra at 419-420; *Patrick v. State,* 245 Ga. 417, 423-424 (265 SE2d 553) (1980). "The only burden which the trial court expressly placed on either of the parties was the burden placed on the state to prove the defendant's guilt beyond a reasonable doubt." *Lemley v. State,* 245 Ga. 350, 353 (264 SE2d 881) (1980). Considering the entire charge, portions of which are logically, if not "rhetorically inconsistent with a conclusive or burden shifting presumption," Sandstrom v. Montana, supra at 519 (n. 7), we believe a reasonable juror would interpret the above "presumptions" as merely permissive. Such presumptions are not violative of Sandstrom.

3. In his final enumeration, appellant asserts that the trial court erred in charging the jury on the law of confessions. We cannot agree.

Appellant made the following statement to police after his arrest: "I got into the van with Bob and he and I rode around and got high and drank some Beer. He then gave me a joint which Bob said had PCP or Tea in it and it would really get me high. I smoked it and got real high and then began to get sick. We ended up on Lumpkin Rd.

---

[4] We are aware that in United States v. Chiantese, 560 F2d 1244, 1258 (5th Cir. 1977), a divided Fifth Circuit found such language to be burden shifting. A specially concurring opinion by Judge James C. Hill states the following view: "Although the majority expressly disapproves the clause 'so unless the contrary appears from the evidence' used in the *Mann* charge, I view this clause as a cautionary instruction intended for the benefit and protection of the defendant. The condemned admonition neither shifts the burden of proof to the defendant, nor requires the jurors to find criminal intent as a matter of law. Rather, it instructs the jurors that they may not even infer guilt from the evidence if they also might infer innocence. Defendants in criminal cases are entitled to have the jury clearly instructed as to every possible defense. Therefore, although a general charge is given concerning the defendant's right to be proved guilty beyond a reasonable doubt, the jury also should be charged concerning the weight to be given circumstantial evidence subject to more than one interpretation." This position is echoed in the dissent. In United States v. Spiegal, 604 F2d 961, 969 (5th Cir. 1979), it was acknowledged that the "prophylactic rule" (n. 15) of Chiantese was propounded by the court in its supervisory capacity. The court recognized that "Sandstrom does not mandate a finding that the charge at issue is unconstitutional." We believe this to be the case here.

off Hwy 56 where Bob stopped the van. He then started hasseling me about getting him a pound. I was very sick and was laying on the ground outside of the van. Bob kept hasseling me and arguing with me and laughing at me. I got mad and produced a pistol and fired at Bob while he was in the drivers seat of the van and I was standing at the passenger door on the right side of the van. I think I fired two or three shots. I then got scared from being so high and began to run away."

"The true determinant of whether the defendant has made a confession or merely has given a statement 'is whether the statement is offered by the accused as exculpatory or inculpatory.' *Robinson v. State,* 232 Ga. 123, 126 (205 SE2d 210)(1974); *Gaines v. State,* 239 Ga. 98, 100 (236 SE2d 55) (1977). ' "A statement which includes facts or circumstances which show excuse or justification is not a confession of guilt even if it admits the main fact." ' *Robinson v. State,* supra, at p. 126." *Johnson v. State,* 242 Ga. 822 (251 SE2d 563) (1979). In the instant case, "[t]he statement was a confession because it admitted the main fact, the killing, without including facts or circumstances showing excuse or justification." Id. at 822.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 23, 1981 —
REHEARING DENIED JULY 14, 1981.

*B. H. Barton,* for appellant.
*Sam B. Sibley, Jr., District Attorney, William H. Lumpkin, Assistant District Attorney, Arthur K. Bolton, Attorney General, Charles E. Brown, Staff Assistant Attorney General,* for appellee.