66595. HICKS v. THE STATE.

DEEN, Presiding Judge.

Clem Hicks was convicted by a Tattnall County jury of the armed robbery of a convenience store and sentenced to fourteen years' imprisonment and four years' probation. The sole clerk on duty at the time of the 6:00 a.m. robbery testified that he initially saw appellant in the store walking towards him down an aisle, and that appellant came to a stop beside the drink cooler which Durrence, the clerk, was filling. Neither spoke to the other, and Durrence went into a nearby store room for more drinks. He testified that he was suddenly grabbed from behind and that, upon twisting around to face his assailant, he saw that it was the same person who had approached

a few moments earlier. He further testified that the man forced him at knife-point to empty the cash register and then marched him to an office and ordered him to crawl into a base cabinet. Durrence, assisted by the robber, then spent a minute or two removing the contents of the cabinet so as to make room for Durrence to get in.

Upon hearing the front door close, Durrence climbed out of the cabinet, ran to the front window, and observed that the brake light and the interior light of a car parked nearby flashed on and off, but that the car did not drive away. He then called police. Investigating officers were able to trace the ownership of the car, which was apparently out of gas, to appellant's mother.

At this point appellant's wife arrived with gasoline for the car but was detained by police officers, who elicited the information that her mother-in-law allowed appellant to use the car at will. Police then went to appellant's dwelling, took him into custody, drove him to the convenience store, and asked Durrence if he were the robber. The appellant was seated in the rear seat between two officers; because of the cold weather the windows were closed and only one front door was open. Durrence testified that he did not get close enough to lean down and look through the door and that the rays of the rising sun were reflected off the window glass into his eyes, making it impossible to see anything inside the car other than dark forms. Durrence thereupon informed the officers that under the circumstances (the seated position; the partially obscuring bodies of the police officers; the sun in his eyes) he could not be sure that appellant was the same person who had robbed the store. Police had already ascertained, however, that appellant fitted Durrence's prior description as to height, weight, and general facial and body structure. Later that same day Durrence was able to make an immediate and positive identification of appellant from a line-up of six males of similar age, skin tone, facial structure, and build.

Appellant's wife initially made a statement that left her husband's whereabouts unaccounted for during the time of the robbery. She subsequently recanted, however, and stated that he was at home with her from approximately 1:00 a.m. until approximately 7:00 a.m. The friend who took appellant and his wife to get gasoline between the hour of the robbery and the time of appellant's apprehension testified that as they drove with the gasoline towards the stranded car, appellant saw a police officer standing nearby and insisted that the witness take him home rather than to the car, stating that he had heard that the police wanted to frame him. At trial the wife's alibi testimony was impeached by the prior inconsistent statement, and the jury found appellant guilty. In appealing from the judgment imposed subsequent to conviction, appellant enumerates

as error the trial court's allowing in evidence Durrence's in-court identification, contending that it was impermissibly tainted by the prior one-on-one confrontation between Durrence and appellant at the convenience store shortly after the robbery. *Held:*

1. Because of the possibility of misidentification and ensuing irreparable harm to the person thus wrongfully accused, the United States Supreme Court has cautioned against the use of so-called one-on-one showups. Neil v. Biggers, 409 U. S. 188, 196 (93 SC 375, 34 LE2d 401) (1972); Stovall v. Denno, 388 U. S. 293, 301 (87 SC 1967, 18 LE2d 1199) (1967); *Davis v. State,* 233 Ga. 847 (213 SE2d 695) (1975). Such face-to-face confrontations between accused and witness are permissible only when the "totality of the circumstances" of the one-on-one showup is such as to ensure that the validity of the identification has not been vitiated so as to deprive the accused of fundamental fairness. Neil v. Biggers, supra; *Thornton v. State,* 238 Ga. 160 (231 SE2d 729) (1977).

The specific danger against which the Supreme Court's admonitions were intended to guard is that the witness, when asked to make an in-court identification, may identify the accused as one whom he has seen at the one-on-one showup rather than during the perpetration of the crime. It is in this connection that the factors constituting the test set forth in Neil v. Biggers, supra, come into play; (1) the witness' opportunity to view the accused at the time of the offense; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description; and (4) the level of certainty of the identification. See *Griffin v. State,* 229 Ga. 165 (190 SE2d 61) (1972); *Daniel v. State,* 150 Ga. App. 798 (258 SE2d 604) (1979).

In the instant case the victim, Durrence, was in the robber's immediate presence some ten or more minutes, during which time he was looking directly at his assailant for a total of at least three minutes: first as the latter approached down the store's aisle; again as Durrence turned to scuffle with the attacker who had grabbed him from behind; and yet a third time when they were working together to clear the base cabinet. Thus the identifying witness (1) had ample opportunity to observe the robber and (2) did so with that degree of attentiveness commensurate with being in fear for one's life. His prior general description was accurate (3) as to height, weight, and general features; and (4) his identification at the line-up was immediate and definite. Under the "totality of circumstances" test the in-court identification was not impermissibily tainted. Compare *Arnold v. State,* 155 Ga. App. 782 (272 SE2d 751) (1980).

Had Durrence identified appellant during the brief one-on-one confrontation, therefore, his evidence would have met the criteria of Neil v. Biggers, supra. The unusual feature of the challenged

identification in the instant case, however, is that the witness did not make an identification during the initial post-crime confrontation. The danger of impermissible suggestiveness with which the Supreme Court was concerned in Biggers and related cases clearly was inoperative here, as the witness, when shown the appellant seated in the police car, simply declined to make an identification of which he could not be certain in the circumstances. What is significant in this case is not that the witness did not make (and would not purport to make) an identification under such unfavorable conditions, but rather that he had no difficulty in making a positive identification during the line-up, when he saw appellant in the same posture as that in which he had initially seen the robber, and in a clear light.

2. Moreover, even assuming, *arguendo,* that the identification was tainted, there was a wealth of both direct and circumstantial evidence pointing to appellant's guilt. The automobile he customarily drove was found parked within sight of the convenience store immediately after the robbery; coins of the denomination taken from the store were found lying in the roadway between the store and the automobile. The witness who had taken appellant and his wife to get gasoline testified that when they were driving back to the stranded car and appellant saw a police officer standing nearby, he had insisted that he be taken home and had alluded to a "frame-up." The alibi defense was seriously eroded by conflicts in the testimony of appellant's wife and that of other witnesses, and by the conflict between her testimony at trial and her prior statement. Such are questions of credibility and are properly for the jury. *Bryant v. State,* 236 Ga. 790 (225 SE2d 309) (1976). Clearly, there was sufficient evidence adduced by the prosecution to authorize a reasonable trier of fact to find appellant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Crawford v. State,* 245 Ga. 89 (263 SE2d 131) (1980).

*Judgment affirmed. Banke and Carley, JJ., concur.*

DECIDED SEPTEMBER 7, 1983.

*Jon Gary Brannan,* for appellant.
*Dupont K. Cheney, District Attorney, Claude M. Kicklighter, Jr., Assistant District Attorney,* for appellee.